All right, the next case of the day is Webber v. Butner. We'll hear from Mr. Pavlik. Good morning, Your Honors. My name is Eric Pavlik. I'm here for the appellants John Webber and Deborah Webber. May it please the Court. Your Honors, Mr. Webber's non-use of a hard hat on the day he was injured did not cause a branch to break off of the dead tree high above him and strike him in the head. And we know that the Comparative Fault Act requires a showing of both fault and a causal connection between that fault and the injury-causing event. Comparative fault, after all, is essentially negligence in reverse. And causation is so important to the Comparative Fault Act that in Section 3 of the Comparative Fault Act, 3451.2.3, titled Causation, the Indiana legislature told us, in an action brought under this Act, legal requirements of causation apply to, one, fault as the basis for liability against the defendant, and two, contributory fault. So specifically written into the Comparative Fault Act is the idea that there needs to be causation in order for fault to be considered as comparative fault. And that's simply not present here. The fact that Mr. Butner wasn't wearing a helmet didn't cause the branch to fall and hurt him. And we made an oral motion in limine at the beginning of trial because we sensed that defense was going to talk about hard-head evidence. And we asked Her Honor to deny it, to exclude that evidence. She let it in, and we think it was against the rule of law that she did that. And it certainly may have influenced the jury. It's especially important here, Your Honors. Yes, Your Honor. Be some evidence that Mr. Webber did not take appropriate and reasonable precautions in cutting down the trees, regardless of whether it would have avoided or ameliorated this particular injury. I mean, doesn't it indicate that he assumed the risk of problems that could happen the course of cutting the trees, or that he failed to exercise reasonable care to avoid such problems, even if, in this case, the hard hat would not have changed the outcome? Well, Your Honor, I guess, first of all, what you're describing when you say failure to use reasonable care, that is the definition of fault. There still needs to be a causal connection. We certainly would concede that Mr. Webber, if he knew that there was a dangerous condition and he decided to go out and cut the trees that day, that he assumed the risk of being present there. And his standing in that place, cutting the trees, was causally related. But to take your logic to the next step, Your Honor, suppose that Mr. Butner wasn't wearing steel-toed shoes or safety goggles or hearing protection when he was cutting the trees. And obviously, that has nothing to do with preventing an injury from a falling branch, hitting somebody in the head. Could that evidence also be considered in deciding if he was at fault and if the fault contributed to the incident? I would say not. It would open up the floodgates to point to every irresponsible thing that Mr. Webber may have done, whether or not it had any kind of causal relationship to the injuries that he sustained. And here, there was no such relationship. And that's why, Your Honor, the seatbelt cases, which we've cited quite extensively, are important because they're a demonstration of the types of measures that a plaintiff is not expected to take prior to an incident. Judge Posner, in the Barron v. Ford case, said, and this is a quote, wearing a seatbelt does not make it less likely you'll have an accident. The same is true here. Wearing a hard hat does not make it more or less likely that a branch is going to fall from 50 feet above and hit you in the head. The Comparative Fault Act requires causation. The idea from the seatbelt cases that you cannot introduce evidence of seatbelt usage in a motor vehicle accident, which, of course, is well-established even before it was codified in the Comparative Fault Act, has been extended to other safety devices. We've cited a robust string side of cases with courts denying evidence or excluding evidence of other types of safety devices, motorcycle helmets, bicycle helmets, car seats, and indeed hard hats. We cite a couple of cases that deal with hard hats where courts have excluded evidence of non-hard hat use. And one in particular, the Music v. United States case, was a case that was strikingly similar to ours. In that case, a gentleman was cutting down trees in a forest. He wasn't wearing a hard hat. And oddly enough, a jet flew overhead and dislodged a branch. And the district court in that case said you could not introduce evidence of non-hard hat use to show his contributory fault because, in the court's extensive discussion, they say the fact that he wasn't wearing a hard hat had nothing to do with the fact that he got hit in the head with a branch. It didn't contribute to the injury-causing event. That's the key point, Your Honor. So what do we make of the language in Coker v. Kitts? Sure. I have to say I'm a little surprised there's so much room for debate about this question. I agree with you. Under Indiana case law, this is 2019. I agree. And so what we have is a long line of cases dealing with seatbelts, which is relevant here. And then we have the Supreme Court in a case that had nothing to do with safety equipment making passing reference in dicta to safety goggles. But here's what I'll say about safety goggles, Your Honor. First of all, all the court is saying is that safety goggles could meet the definition of fault within the Comparative Fault Act. But we know that for a jury to consider an act of fault because of Section 3 of the Comparative Fault Act, they also have to find that that fault had some causal nexus to the injury-causing event. So it's not clear from Coker whether the Supreme Court would necessarily allow evidence that somebody wasn't wearing safety goggles as a basis for shifting fault. But if there is evidence that the non-use of safety equipment has a causal relationship, then presumably it could be used. And that's why the Kimbrough case, which was also cited by defense, which is the Court of Appeals in 2015, is such a great illustration. Kimbrough relied on Coker in a case, a dispute between neighbors, where there was the case. And in that case, there was extensive evidence, including expert evidence from an expert geohydrologist, that said that if only he had used these better drainage systems and cleaned his gutters and had a sump pump, this would not have happened. That's what's missing here, Your Honor. There's no causal nexus between the fault and the injury-causing event. So that's why it should have been excluded. And one final thing I'll say about it in distinguishing between hard hats and goggles, Your Honor, it's not hard to imagine a worker working on a metal lathe, for example. Metal shavings are flying. A small metal shaving, even at a low velocity, can injure a soft eye. Goggles, in that instance, could literally prevent the injury-causing event. And it wouldn't take much in the description of facts, especially with expert testimony, to say if only he'd been wearing goggles, that metal shard would not have gone into his eye and he wouldn't have been injured. The same can't be said here. Now, I don't know if an expert could have said that Mr. Weber's non-use of a hard hat would have changed the outcome or would have prevented him from getting hurt. But defense conceded that they did not have that expert testimony and they were not introducing it for that reason. So I see that I'm into my rebuttal time, Your Honors. So unless you have any other questions at this moment, I'll reserve. Thank you. Thank you, Mr. Pavlik. And Mr. Stevenson. Good morning, judges. May it please the Court. My name is Ben Stevenson on behalf of Appellee Roger Butner, defendant below. We are not here on a seatbelt case. We are not here on a contributory negligence case. We're not on a common law fault case. We are here on a comparative fault case where the issue is whether a one minor question happened in the trial about the non-use of a hard hat. And as far as whether under comparative fault, that evidence was admissible to show that the plaintiff bared some fault. The crucial difference between what we are here today on this non-use of a safety equipment case and a seatbelt case is demonstrated throughout plaintiff's case law, and that's most directly stated in that Hopper case. And it's the crucial difference between the seatbelt cases and a hard hat case is the distinction between the duty to anticipate negligence of another and the plaintiff's duty to avoid injuring himself. This is a case where Mr. Butner, Mr. Weber, had a duty to avoid injuring himself. This is not a case where someone else is causing this tree to fall. This is Mr. Weber himself cutting a tree down. Mr. Butner is there at the scene, but he is not the one operating a chainsaw at the time. And that's really the main difference between this case and music. In the music case, it had absolutely nothing to do with Mr. Music cutting down a tree. The facts of the music case is Mr. Music was standing. He might as well have been walking through the woods. He had no involvement in cutting down a tree at that time. He was not using a chainsaw at that time. He was merely standing under a tree when a jet flew over, and the jet, which was flying well under the spatial limits that was negligence on their part, knocked over this branch. You know, the cases that you cited from the Indiana courts discussed the failure to take safety precautions, such as wearing safety glasses as a potential example of comparative fault evidence. But they did not involve any actual situation in which such evidence was admitted. Is there any Indiana case in which such evidence was admitted in the manner done in our case, as opposed to hypothetically? There are no published opinions. None? None. There are no published opinions. I believe there's one unpublished opinion that I obviously did not cite, and I don't actually have that specific case law in front of me, because it's an unpublished opinion that's not admissible. But there is no published opinion in Indiana law specifically dealing with hard hats or goggles. There is just the Coker v. Goetz case and that Kimbrough case. Those are the two that identify and discuss the use of safety equipment. So is there any evidence here that the absence of a hard hat caused this accident? No, and that's obviously what we feel is not the burden we have to meet. Going through basically plaintiff's cited case law, I believe most of it actually stands in favor of the defendant, such as the Ingram case, which is a case involving basically water accumulation where someone drives through and they were not wearing a seat belt. That's, again, a contributory fault case, not a comparative fault case. But that issue with that case was just mitigation of damages. It was only sought to be put into evidence to say that he would have not a comparative fault, not a contributory fault, just would it have changed his damages. And the court's opinion, the court's order in this case agrees with that, that the evidence was not admissible for that purpose. The Eden versus State case, that's the case where the child on a motorcycle crashed into a car. The issue in that case was whether wearing a helmet not would prevent his injuries, not whether that was reasonable, but whether the State in that case argued that the dust got into his eyes, which would cause this accident. And the court ruled in that case it's not foreseeable for dust to get in your eyes. You shouldn't have to predict every single danger. In our case, it is foreseeable that you'd get hit by a branch when you're cutting down trees. Mr. Weber testified that he was aware of the danger. He specifically testified he was aware these were dead trees. He specifically testified this was a known danger of falling branches. And he did not take that precaution of wearing a hard hat, which is, again, not acting as a reasonable person. Discussing their Hopper versus Carey case, again, this is primarily a contributory fault case. Nearly every single case cited by the plaintiff is contributory fault, not comparative fault. Does not really get an analysis of comparative fault. This is an issue where a firetruck crashed, so the CFELT statute didn't actually apply in this case. Why do you think there's an important difference between those cases that are still under the old contributory negligence rule and the comparative fault statute? It goes to those cases are relying on common law duty, whereas in the Comparative Fault Act, we have the defined term of what a fault is. They're not working under that defined term of any act or mission that is negligent, willful, wanton, reckless, or intentional towards the person or property of others. And that term also including unreasonable assumption of risk, not constituting enforceable express consent, incurred risk, unreasonable failure to avoid injury and mitigate damages. And that's what this case is about. But you agree that under the statute, the jury has to be instructed as they were here on cause, right? Do you only count fault that caused or contributed to cause the accident? Well, that's not what the definition says. So I guess I don't agree with that. I agree. The definition of fault is broad, but in instructing the jury, in assessing percentage of fault, the jury shall consider the fault of all persons who caused or contributed to cause the alleged injury, death, or damaged property, etc. So I think that's where, at least I understand the plaintiff to be making his argument based on the need to show cause. I don't think that's a proper reading of the term of the fault, and that's not what the Indiana Supreme Court has said, because the Indiana Supreme Court in that Kocher v. Goetz case does specifically say unreasonable failure to avoid an injury or to mitigate damages is included in the definition of fault. So there's no requirement there to have this expert testimony. And I would dispute one thing, that there was actually testimony about the use of a hard hat preventing injuries in this case. That was by David Moore. He stated under examination by plaintiff's counsel that he was struck in the head by a branch. While he was wearing a hard hat, and he was not injured. So there actually was testimony in this case about being struck in the head of a hard hat and not being struck. Under those circumstances, are you saying that was enough for the jury to find that Mr. Weber's failure to wear a hat contributed to his injury here? And again, I don't know if the jury found that way at all. I'm only arguing that it's admissible based on that argument. Whether the jury actually weighed this evidence is something we don't know. And that's also something the plaintiff has not met their burden on to show that the jury weighed this issue at all. How are they supposed to do that? It's admitted, they've got instructions that say they may consider it, and they come back with a 51-49 verdict. What more could a plaintiff show? I guess their only issue is that they're just supposing that because this was admitted, it made a difference. This is a case where Mr. Weber was the one that volunteered. He's the one that's operating this chainsaw. He's the one that is cutting down this tree. This is all actions by himself, and he has a duty to take reasonable care in protecting himself from his own activities. Now, this is a situation where Mr. Butner was the one cutting down the tree, and Mr. Weber's standing over to the side, and then instead of the tree falls down and he gets hit in the head, we're in a totally different situation. At that point, I would agree. He does not have that duty to wear a helmet. That puts us into the music situation where he's not actively causing the event. In this case, Mr. Weber is the one that is causing the event in this case. Could you address plaintiff's hypothetical about, well, suppose he's not wearing steel-toed boots. He's supposed to do that. That's admissible evidence. Sorry? That would be admissible evidence. As fault, contributing to the accident here? To submit to the definition of kosher versus get. Obviously, that was not testimony in front of us. That was not something that happened. Actually, I believe there was evidence of the shoes he was wearing, so it actually was admissible. Plaintiff never objected to that. It was testimony that he was wearing tennis shoes. There was no objection to that. It was admissible. You'd have to show that a jury. I don't recall you arguing anything about that, though. No, it was the same testimony that came out at the same time as basically the hard hat is. He was wearing regular shoes. He was wearing regular glasses. He was wearing some hearing protection. The only issue they made was specifically this hard hat. So I disagree with that contention. I believe that pursuant to the kosher versus get, he was wearing steel-toed boots. You think that would all be admissible? That would all be admissible. And available to the defendant to argue fault? That you're not acting as a reasonable person by taking appropriate safety precautions. I only have 10 seconds to go at this time unless there's any other questions. Anything else you want to tell us? We've asked a lot of questions. Thank you, Judge. All right. Thank you, Mr. Stevenson. Rebuttal, Mr. Pavlik. Thank you, Your Honors. Very briefly, with respect to hearing protection and goggles and steel-toed boots and things like that, we did object to that. Our motion limiting really wasn't limited to a hard hat, but the hard hat became the focus. But I think that Mr. Stevenson's and your questioning and his responses to it demonstrates that the defense has taken an oversimplistic view here. They think that if something meets the definition of fault, as provided in the Comparative Fault Act and discussed in dicta by the court in Coker, that it therefore can be introduced. But the Comparative Fault Act doesn't say that. The Comparative Fault Act says you have to show fault, and you also have to show causation. That's why there's a Section 3 of the Comparative Fault Act that says you have to show causation. So perhaps not wearing a hard hat meets the definition of fault. It still doesn't mean that there was a causal problem. But I think that what's happened here... Don't we have to basically assume that it does qualify as fault? Not wearing a hard hat. I think under Coker I would acknowledge that it most likely does. But just as the hard hat shouldn't have been introduced because there was no causal connection, nor should any of the safety possibilities that Mr. Weber may or may not have used have been introduced. And this illustrates the problem that we have when inadmissible evidence gets introduced. We don't know what the jury considered, but it essentially pollutes the arguments. They have a pretty good argument that says that Mr. Weber shouldn't have been out there that day. And that's an assumption of risk argument that the jury may have found compelling. But then they had to sprinkle in this idea, yeah, and he wasn't wearing a hard hat, and he was wearing tennis shoes that day. And then all of a sudden we have the jury considering things that they shouldn't be considering. And I would go so far as to say that although the jury was instructed that it couldn't consider the hard hat in deciding whether Mr. Weber's massive permanent brain injuries would have been different, they probably did. They may have. I know they were so instructed, but it's hard to tell a jury to forget about that. And easily in the jury room could have said, well, if only he'd been wearing a hard hat, he'd probably be fine right now. And those are the kinds of problems that we run into when evidence is introduced that shouldn't be there in the first place. There wasn't any discussion of the invited error, Your Honors, but I would like to simply point out if that's something that the court were to look at, the citations that defense relies on in their invited error argument do not support the propositions that they made before. I would just point out to the court that there is nothing in the record showing that we introduced an instruction about hard hats, literally. All there was was a discussion with Her Honor where she said you could offer a limiting instruction, but it was only our indication that we might do that. And secondly, when she read through the numbered jury instructions at the end of the case, the numbers she was referring to that we had submitted in December 2017 in anticipation of a January 2018 trial, numbers 1 through 42, those 1 through 42 instructions she read through and asked if we had objections did not include the hard hat instruction. Although the hard hat instruction... Okay. Thanks very much. Thank you very much. Thanks to both counsel. The case will be taken under advisement.